**Hanna E. KHRAISH, Appellant,**

v.

**Ghassan HAMED, et al., Appellees.**

No. 05–87–00897–CV.

Court of Appeals of Texas,
Dallas.

Nov. 23, 1988.

Rehearing Denied Jan. 5, 1989.

Eugene Zemp DuBose, Dallas, for appellant.

Marc H. Richman, Dallas, for appellees.

Before HOWELL, LAGARDE and KINKEADE, JJ.

OPINION ON REHEARING

LAGARDE, Justice.

Appellant Hanna E. Khraish's Motion for Rehearing is granted. We withdraw our original opinion, and the following is now our opinion.

Plaintiff, Hanna E. Khraish, appeals from the district court's order "removing" four notices of *lis pendens* filed by Khraish on property owned by Ghassan Hamed (Hamed), a home builder. Khraish raises three points of error, which remain undecided because we conclude that this court is without jurisdiction to hear this interlocutory appeal. Accordingly, we dismiss for lack of jurisdiction.

Khraish sued Hamed for fraud and sought to recover money damages; Khraish further sought to impose a constructive trust on certain realty, allegedly the subject of the fraud, and to trace the proceeds of the fraud into other real property. Hamed's brother, Samir Hamed (Samir), and Texas American Bank/Plano (the bank) were also named as parties. Khraish asserted that Hamed fraudulently procured money from Khraish, used the money to

purchase various pieces of realty, and subsequently transferred one of the pieces of realty to his brother, Samir. Khraish sought to set aside the transfer to Samir and to void the lien of the bank with respect to the transfer. Khraish filed a notice of *lis pendens* on each of the properties.

Hamed moved for removal of four of the notices of *lis pendens* filed on property located in Collin County, Texas, because Khraish's pleadings demonstrated no right to title, or to a security interest, in real property located outside of Dallas County, Texas; therefore, says Hamed, Khraish improperly filed notices of *lis pendens* on those four properties that were only collaterally linked to the lawsuit. The remaining *lis pendens* notices were not included in either Hamed's motion or the trial court's order; therefore, they are not before this Court on appeal.

The trial court granted Hamed's motion and ordered that the notices of *lis pendens* on the four Collin County properties be removed and further ordered that Khraish refrain from filing "any notices of *Lis Pendens* on any property which was the subject of the Notices of *Lis Pendens* as set forth in Defendant, Ghassan Hamed's, 'Motion for Removal of *Lis Pendens*', or in [Khraish's] 'Response to Motion for Removal of *Lis Pendens*' presently before" the trial court. The underlying cause of action is still pending in the trial court. The only matter before us is an appeal from the interlocutory order of the trial court "removing"[1] the *lis pendens* notices.[2]

■ Our threshold inquiry is whether this appeal is properly before this Court as an interlocutory appeal. Pursuant to section 51.014 of the Texas Civil Practice & Remedies Code, a person may appeal an interlocutory order from a district court,

county court at law, or county court only if the order falls into one of the following categories:

(1) appoints a receiver or trustee;

(2) overrules a motion to vacate an order that appoints a receiver or trustee;

(3) certifies or refuses to certify a class in a suit brought under Rule 42 of the Texas Rules of Civil Procedure; or

(4) grants or refuses a temporary injunction or grants or overrules a motion to dissolve a temporary injunction as provided by Chapter 65.

TEX.CIV.PRAC. & REM.CODE ANN. § 51.014 (Vernon Supp.1988). In this instance, it is obvious that the first three categories are inapplicable. Thus, in order to be appealable as an interlocutory order, the order from which Khraish appeals must be characterized as a temporary injunction.

Citing *Hughes v. Houston Northwest Medical Center*, 647 S.W.2d 5, 8 (Tex.App.—Houston [1st Dist.] 1982, writ dism'd w.o.j.), Khraish contends that the trial court's order, which removes the four Collin County notices of *lis pendens* and prohibits refiling of those notices, contains elements of a temporary injunction and is, therefore, appealable as an interlocutory appeal. We assume that Khraish complains of being enjoined from placing a cloud on the title of real property. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 65.011(4) (Vernon 1986). Normally, an order cancelling notice of *lis pendens* cannot be construed as a temporary injunction. *Werneke v. Seabury*, 720 S.W.2d 886, 887 (Tex.App.—Fort Worth 1986, no writ). The court in *Werneke* stated, in relevant part:

> Temporary injunctions are issued by court orders which contain mandatory safeguards. TEX.CIV.PRAC. & REM. CODE ANN. sec. 65.021 (Vernon 1986). In marked contrast to the procedural complexities of the injunction statute, lis

---

**1.** We note that section 12.008 of the Texas Property Code speaks in terms of cancellation, rather than removal, of *lis pendens* notices. TEX. PROP.CODE ANN. § 12.008.

**2.** Even though the transcript before us contains the denial of the motion for summary judgment, Khraish states in his brief he does not seek to appeal that order.

pendens is a fairly simple device enacted as part of the property code. Specifically, lis pendens is a signed statement by an attorney stating the particulars of the underlying cause of action. The court is not involved in either the filing or the issuance of the notice of lis pendens. In fact, the county clerk with whom the notice is filed, must file the notice of lis pendens without further inquiry. TEX. PROP.CODE ANN. sec. 12.007 (Vernon 1984).

\* \* \* \* \* \*

An order granting or cancelling a notice of lis pendens is not in the form of an injunction. We recognize that the injunction and lis pendens statutes are co-equal, designed by the legislature to accomplish differing purposes. Lis pendens is designed merely to protect innocent buyers from purchasing land subject to litigation. *Kropp v. Prather*, 526 S.W.2d 283, 287 (Tex.Civ.App.—Tyler 1975, writ ref'd n.r.e.).

*Werneke*, 720 S.W.2d at 887–88. Moreover, we would be loath to hold that the mere fact that a party was directed to do a certain thing pending trial makes the court's order a temporary injunction. *McQuade v. E.D. Systems Corp.*, 570 S.W.2d 33, 35 (Tex.Civ.App.—Dallas 1978, no writ).

An order cancelling or removing *lis pendens*, however, may, under certain circumstances, be an appealable injunctive order. *Hughes*, 647 S.W.2d at 7–8. In *Hughes*, the appellate court determined that the trial court had, in effect, granted a temporary injunction in favor of the defendants by ordering that the *lis pendens* be cancelled and that no further *lis pendens* be filed. It is important to note, however, that crucial to the court's decision was its initial determination that the plaintiff's notice of *lis pendens did comply* with section 12.007 of the Texas Property Code.[3]

Pursuant to section 12.007, a *lis pendens* may be filed during the pendency of an action involving the title to real property, the establishment of an interest in real property, or the enforcement of an encumbrance against real property. Here, Khraish seeks to establish an interest in the real property as security for the recovery of any damages he may be awarded against Hamed and Samir on his currently pending fraud allegation. This does not come within the provisions of section 12.007. *See Moss v. Tennant*, 722 S.W.2d 762, 763 (Tex. App.—Houston [14th Dist.] 1986, orig. proceeding).

In *Hughes*, the property upon which the *lis pendens* was filed was the subject matter of the litigation. In that instance, the plaintiffs were partners and shareholders in a partnership and corporation which had contracted to sell certain property to another entity. The plaintiffs filed suit to impose a constructive trust on the title to the property and to cancel the proposed sale of the property because the contract had been procured by fraud. The plaintiffs filed *lis pendens* to prevent the defendant from placing the property beyond the plaintiffs' reach, pending the outcome of the litigation.

In contrast, it is evident from the record before us that Khraish's notices on the Collin County property do not comply with section 12.007. Khraish, in his eighth amended petition, relies upon an alleged loan agreement between him and Hamed. The loan agreement, drafted by Khraish, states:

This will acknowledge our agreement that the undersigned, Hanna Khraish ("Khraish") has loaned to [Hamed] a total amount of Two Hundred Eighty–Five Thousand One Hundred Seventy–Seven and $^{87}/_{100}$ Dollars ($285,177.87), as itemized on Exhibit A attached hereto, for the purpose of financing [Hamed's] purchase of certain real property in *Dallas County, Texas* and [Hamed's] construction thereon of a house or houses for resale, and our further agreement that additional sums for the same purposes may be loaned to [Hamed] in the future.

3. TEX.PROP.CODE ANN. § 12.007 (Vernon 1984).

(Emphasis added.) Khraish alleges that loan money which he gave to Hamed, pursuant to the loan agreement, was used by Hamed to purchase certain pieces of property and to construct improvements on the property. Without deciding the merits of Khraish's claims, and assuming, without deciding, that the loan agreement does indeed exist, the real property, intended by Khraish to secure the loan agreement, would be only that real property which is located in *Dallas County, Texas*. All of the real property made the subject of Hamed's motion for removal of *lis pendens* was located in *Collin County, Texas* and, therefore, was not subject to the loan agreement.

■ Thus, the notices of *lis pendens* filed in Collin County affect Khraish's cause of action collaterally, not directly, and do not come within the provisions of section 12.007. *See Helmsley–Spear of Texas, Inc. v. Blanton*, 699 S.W.2d 643, 645 (Tex.App.—Houston [14th Dist.] 1985, no writ). Where only a collateral question is involved, which might ultimately affect the parties' title to the property, *lis pendens* does not apply. *Lane v. Fritz*, 404 S.W.2d 110, 112 (Tex.Civ.App.—Corpus Christi 1966, no writ). Moreover, these *lis pendens* notices are void. *Moss*, 722 S.W.2d at 763. Therefore, Hamed was neither required to comply with section 12.008 in order to nullify, remove, or cancel the notice, nor required to comply with procedural safeguards of a temporary injunction. The trial court acted properly when it ordered removal of those *lis pendens* notices that were improperly filed in Collin County. Without meeting the requirement of section 12.007, Khraish cannot complain that he has suffered the adverse effect of an improper removal or cancellation of his notices of *lis pendens*.

Because the notices of *lis pendens* filed on the Collin County property do not comply with section 12.007 and are, therefore, void, the trial court's order cannot be said to contain elements of a temporary injunction. Thus, this appeal is dismissed for lack of jurisdiction.

HOWELL, Justice, dissenting.

I dissent. The analysis contained in *Hughes v. Houston Northwest Medical Center*, 647 S.W.2d 5 (Tex.App.—Houston [1st Dist.] 1982, writ dism'd w.o.j.), is flawed in certain respects, but the result is correct, and it is controlling in this case.

The analysis presented by the majority is circuitous at best. The majority seeks to distinguish *Hughes* on the basis that the *lis pendens* under attack in that case was valid, whereas, in the opinion of the majority, the *lis pendens* under attack here is void. Thus, reasons the majority, while the *Hughes* court did have jurisdiction, we do not. In sum, our majority implicitly but necessarily holds that jurisdiction of the appellate court hinges upon the question of whether the trial court committed error. Certainly, this cannot be the law.

Likewise, our majority has disregarded the ancient rule of *expressio unius est exclusio alterius*. The legislature has specified a means whereby a trial court may, pendente lite, set aside *lis pendens*: After notice to the affected party, the party seeking removal must satisfy the trial court that the plaintiff can be adequately protected by a cash deposit or bond, and he must make such a deposit or bond. TEX. PROP.CODE ANN. § 12.008 (Vernon 1984). In the face of this specific provision, the majority would hold that if a trial court can be persuaded that the *lis pendens* is invalid, the trial court has authority to discharge the *lis pendens* without the showing and without the bond required by the statute.

Inasmuch as a procedure for the interlocutory discharge of a *lis pendens* was unknown to the common law and is not provided for by statute, its existence can be justified, if at all, only upon vague and sweeping generalizations of inherent power and natural law. This writer denies that such power exists. *Lis pendens* is a component of the constructive notice statutes, upon which our entire system of recording instruments relating to title is based. *See Moran v. Midland Farms Co.*, 282 S.W.

608, 612 (Tex.Civ.App.—El Paso 1926, no writ); *see also* TEX.PROP.CODE ANN. § 13.004(a) (Vernon 1984) (recorded *lis pendens* is notice to the world of its contents). It follows that the only relief available from the procedure must be found within the constructive notice statutes. *See Moran*, 282 S.W. at 612.

The majority concludes that the trial court's order in this case is not a temporary injunction. I disagree. In justification of the majority opinion, however, it must be pointed out that there is much dicta and much confusion in the authorities defining what is and what is not a temporary injunction order.

A resort to the basics is necessary. Under the English common law system upon which our courts are founded, it was axiomatic that courts of chancery acted only in personam whereas the courts of law primarily acted in rem. Although our Texas legal system has merged legal and equitable remedies in the same courts, the distinction between legal relief and equitable relief remains. An award of money damages is clearly legal relief.[1] It is equally clear that an order commanding that the defendant perform some act or refrain from the performance thereof is equitable relief. *See* J. Pomeroy, *A Treatise on Equity Jurisprudence* §§ 23, 428 (5th ed. 1941).

Although the maxim that equity acts only in personam is well established, it would be inapt to declare that the common law courts acted only in rem. *See* T. Plucknett, *A Concise History of the Common Law* 677–80 (1956). Thus, a money judgment recovered in a court of law was enforceable by the issuance of a writ of execution or a distraint calling for the seizure

and sale of the defendant's property. *See* Plucknett at 389–90 (1956). Those who attempted to hide their property or to obstruct the officer in seizing non-exempt property for the purpose of enforcing the execution could, without doubt, even at common law, be fined and imprisoned until they disgorged the purloined property. After the rites of compurgation had been dispelled and the concept of jury trial had evolved into the concept of evidentiary inquiry before a group of disinterested fact finders, the courts at law necessarily assumed the power to compel persons to appear and testify. *See* Plucknett at 383–85. In addition, the prerogative writs, particularly mandamus and prohibition, acted upon the person and were enforced against the person through fine and imprisonment until obedience was secured.

The pace of twentieth century life has created even greater complications, but the distinction between legal and equitable relief remains. Wherever a court acts in personam, the relief is presumptively equitable, specifically, injunctive in nature. The means for securing compliance from those who defy an in personam or injunctive order remains the same as it was in the courts of chancery four hundred years ago —a citation for contempt followed by imprisonment until compliance is secured. TEX.R.CIV.P. 692.

Without doubt, when a Texas court commands that a witness or party appear and give evidence, the court is not granting injunctive relief any more than the English courts at law were granting injunctive relief in commanding a person to give evidence. However, our modern day court system has gone far in building a scheme of statutes and rules whereby evidence

---

**1.** Terminology must be clarified at this point. The statement that equity acts only *in personam* refers to the fact that, historically, the courts of chancery enforced their decrees only through the exercise of the contempt power. On the other hand, the *judgments* of the law courts, even if they were *personal judgments,* were, in the first instance, at least, enforceable only through the seizure and sale of the defendant's property. A *judgment* which was enforceable through the seizure of all non-exempt property of the defendant came to be referred to as a *personal judgment,* whereas a *judgment* only enforceable through the seizure and sale of certain specific property of the appellant came to be referred to as a *judgment in rem.* The distinction between *personal* judgments and judgments *in rem* is completely separate from the distinction between equitable and legal relief being discussed in this opinion.

may be gathered before a trial. By analogy, a discovery order, although inherently in personam and subject to enforcement through the contempt power, is not an injunctive order. *See Sobel v. Taylor,* 640 S.W.2d 704, 707–08 (Tex.App.—Houston [14th Dist.] 1982, no writ).

An injunctive order, given pendente lite, is by definition either a temporary restraining order or an injunction. By law, the life of a restraining order can amount to but a few days. TEX.R.CIV.P. 680. Any other injunctive order issued pendente lite, by definition, amounts to a temporary injunction.

The power to issue temporary injunctions has been carefully circumscribed by our law and rightfully so. The potential for abuse is great. Therefore, temporary injunctions cannot be issued except after notice to the opposing party and the taking of evidence from both parties. *Gibson v. Shaver,* 434 S.W.2d 462 (Tex.Civ.App.—Tyler 1968, no writ); TEX.R.CIV.P. 681. Further, the applicant must show a probable right and probable injury, and he must give bond. *See Southwestern Newspapers Corp. v. Curtis,* 584 S.W.2d 362, 368 (Tex. Civ.App.—Amarillo 1979, no writ); TEX.R. CIV.P. 684. The power to issue temporary injunctions is further limited by the right of appeal. TEX.CIV.PRAC. & REM.CODE ANN. § 51.014 (Vernon Supp.1988).

Obviously, if we were ever to define the giving or withholding of interlocutory relief as being or not being a temporary injunction on the basis of whether the court below fulfilled the procedural requirements of notice, evidentiary hearing, findings of probable right and injury, and the giving of bond, we would be drawing a road map for those who might wish to circumvent the rights protecting those against whom injunctive relief might be desired, including, but not limited to, the right of interlocutory appeal. To the extent that our majority implies that a trial court's order is not a temporary injunction whenever a trial court proceeds by giving a simple order in response to a common motion, the majority

has outlined a ready means to circumvent a well established procedural safeguard with respect to temporary injunctions. Such implication should be expressly denounced. The proper test is to analyze the nature of the relief granted. If the relief is in personam by nature, or is historically equitable in nature, it is presumptively injunctive unless it falls within some special classification created either by statute or by decision.

As stated, it is doubtless true that the courts at law long asserted the right to require both party and non-party witnesses to appear and give evidence. In personam orders directed to this end cannot be classified as injunctive. In addition, our modern day courts have expanded the evidence gathering function through a system of rules and statutes providing for the gathering of evidence in preparation for trial. A discovery order is but an extension of the ancient power of the courts to issue writs and orders to aid in the gathering of evidence. Inasmuch as such orders have never been classified as injunctive, even though inherently in personam, they are non-appealable. *See Crane v. Tunks,* 160 Tex. 182, 328 S.W.2d 434, 434–39 (1959).

Likewise, statutory procedures such as writs of attachment, sequestration, and garnishment have been established for the peremptory seizure of money and property pendente lite. Just as the courts at law were possessed of the power to enforce their writs, the writs of attachment, sequestration, and garnishment may be enforced by in personam orders commanding persons resisting those writs to comply with them on penalty of contempt. Again, such orders, by tradition, are not classified as injunctive orders; no right of interlocutory appeal is available. This principle is illustrated by the cases of *Bowden v. Hunt,* 571 S.W.2d 550, 551 (Tex.Civ.App.—Dallas 1978, no writ), and *McQuade v. E.D. Systems Corp.,* 570 S.W.2d 33 (Tex.Civ. App.—Dallas 1978, no writ).

For instance, in *McQuade,* cited by the majority, the district court entered an order

in aid of a pre-judgment writ of attachment requiring a defendant to pay up to $15,-000.00 into the court's registry. The defendant attempted to appeal this interlocutory order, arguing that it was, in essence, a temporary injunction. *McQuade*, 570 S.W.2d at 34. Noting that the order was in aid of a writ of attachment, this court concluded that it was not appealable. *Id.* at 35. Similarly, in *Bowden*, this court held that an interlocutory order denying a motion to quash writs of garnishment was not a temporary injunction from which an appeal would lie. *Bowden*, 571 S.W.2d at 550–51. Because they involved orders relating to procedures such as attachment or garnishment which have traditionally been considered non-injunctive, cases such as *McQuade* and *Bowden* were correctly decided even though some of the language employed was inappropriate.

The principle that relief which is historically equitable in nature is presumptively injunctive unless it falls within some special classification created either by statute or by decision provides a method of harmonizing opinions that would otherwise appear contradictory. For example, like *McQuade, Pilot Engineering Co. v. Robinson*, 470 S.W.2d 311 (Tex.Civ.App.—Waco 1971, no writ), was also an appeal from an interlocutory order requiring the appellants to place cashier's checks in the amount of $10,000 into the registry of the court. *Id.* at 312. Unlike *McQuade*, however, the trial court's order was not in aid of a writ of attachment. Instead, in *Pilot Engineering*, the owner of a one-third interest in Pilot Engineering sued Pilot Engineering and the other two owners for an accounting and damages. *Id.* After an interlocutory hearing, the trial court denied the plaintiff's request for appointment of a receiver but ordered the cashier's checks placed in the court's registry. *Id.* The court of appeals held this order to be a temporary injunction from which an appeal would lie. *Id.* Similarly, *Whatley v. King*, 151 Tex. 220, 249 S.W.2d 57 (1952), involved a trial court order, entered while the case was pending retrial after remand by the

court of appeals, which required the plaintiff to restore replevied personal property to the defendant. The Supreme Court concluded that the trial court's order was a mandatory injunction subject to appeal. *Id.* 249 S.W.2d at 58.

At first blush, the decisions in *Pilot Engineering* and *Whatley* may appear inconsistent with *McQuade* and *Bowden*. Nevertheless, *Pilot Engineering* and *Whatley* were also correctly decided because they were cases in which the parties were attempting to control the res of the litigation without recourse to any specific statutory remedy such as attachment, sequestration, or garnishment. Inasmuch as the court's orders there entered were clearly of an in personam nature, were therefore presumptively injunctive, and were not pursuant to any specific procedure established by law, the orders were temporary injunctions although not styled as such. They were appealable because they were temporary injunctions. Because those temporary injunctions were issued without following the legal procedures provided in such cases, they were subject to peremptory dissolution. *Pilot Engineering*, 470 S.W.2d at 312.

Before directly addressing the facts of the case in bar, another historic rule must be noted. The English courts of chancery had no power to act directly upon title to real property. 2 J. Pomeroy, *A Treatise on Equity Jurisprudence* § 428 (5th ed. 1941). If the defendant asserted a false or fraudulent title to property, the remedy in equity was to cast him into prison until he executed a deed of acquittance. *Id.* Such is unnecessary in Texas. By statute, the legislature has empowered our courts to act directly upon real property even when the relief being granted is equitable in nature. TEX.CIV.PRAC. & REM.CODE ANN. § 31.001 (Vernon 1986); *see also* 4 J. Pomeroy, *A Treatise on Equity Jurisprudence* § 1317 (5th ed. 1941). Thus, under Texas law, if the defendant sets up a false or fraudulent claim of title to property, the court, by force of its decree alone, may

expunge the false title and confirm the title of the true owner. *See Anderson v. Anderson,* 620 S.W.2d 815 (Tex.Civ.App.— Tyler 1981, no writ). Nevertheless, the relief granted is, by definition of history, injunctive in nature even where the court acts directly against the real estate rather than acting in personam by commanding the defendant to act.

One reason that we must recognize that transfers of an interest in property under the direct action statute are injunctive in nature is because the court is completely free, in every instance, to choose either route. By its decree, the court may either command the defendant to act or may act directly. To hold that the action is injunctive in the one instance and not injunctive in the other would place form above substance. Unless we hold that direct action upon the title to real property is injunctive in nature, we are again falling into the error of publishing a road map directing how to circumvent the procedural due process protection limiting the temporary injunction power.

The *lis pendens* statute must be also analyzed. TEX.PROP.CODE ANN. § 12.007 (Vernon 1984). What is the nature of a *lis pendens?* The statute merely provides persons litigating the title to property a means to give constructive notice to all those taking title to the property that the claimant is litigating a claim against the property. TEX.PROP.CODE ANN. §§ 12.007, 13.004 (Vernon 1984). This is accomplished through the simple expedient of filing a notice to such effect in the deed records. TEX.PROP.CODE ANN. § 12.007 (Vernon 1984). A *lis pendens* is not the writ or process or order of any court. It is accomplished by the plaintiff without recourse to the court in any way, without the assistance of the judge or any court personnel whatever. The *lis pendens* statute is nothing more than an adjunct to the recording statutes.

Undoubtedly, a court has the power to control its own writs and processes. Therefore, any attachment, any subpoena, or any citation may be quashed or modified by simple order in response to a common motion. Such action does not constitute injunctive relief; ergo, there is no right of interlocutory appeal. *See Bowden,* 571 S.W.2d at 551 (motion to quash writ of garnishment).

On the other hand, may a court pendente lite "quash" a deed by simple order in response to a common motion? The proposition is obviously untenable. What about other documents recorded in the deed records? Mortgages? Affidavits of heirship? Foreign wills? Mechanics lien affidavits? Or, *lis pendens* notices? As early as 1926, Texas courts recognized that, absent statutory authorization, a trial court had no such inherent authority to peremptorily cancel a *lis pendens.*

> The Thirty–Ninth Legislature passed an act authorizing the cancellation of lis pendens notice by the court upon [certain conditions].... In the absence of statutory authority for such action, there is no inherent power in the courts to suspend the operation and effect of the lis pendens statutes. If there be decisions by courts of other states recognizing such power without statutory authority, we regard them as unsound and decline to follow the same. Such action, in our opinion, is judicial suspension of valid statutory provisions and not permissible.

*Moran v. Midland Farms Co.,* 282 S.W. 608, 612 (Tex.Civ.App.—El Paso 1926, no writ). If proper analysis be applied, we must hold that any such attempted assertion of power by a trial court amounts to the exercise of injunctive relief, operating through section 31.001 of the Civil Practice & Remedies Code which allows courts to give injunctive relief directly affecting the title to real estate.[2]

Nevertheless, certain recent cases have held that, when a *lis pendens* is invalid because it does not meet the requirements of section 12.007 of the Property Code, a

---

**2.** At the same time, the finding in *Midland Farms* that the trial court order being reviewed was a permanent injunction rather than a temporary injunction will not stand up to analysis.

The plaintiff in *Midland Farms* filed a suit claiming a lien on a large ranch and concurrently filed *lis pendens* notices. The C Ranch

trial court, through interlocutory order in response to a common motion, may directly cancel the *lis pendens*, the primary case being *Helmsley–Spear of Texas, Inc. v. Blanton*, 699 S.W.2d 643, 645 (Tex.App.—Houston [14th Dist.] 1985, no writ) (conditional writ of mandamus ordering trial court to cancel *lis pendens*). *Helmsley* was followed by *Moss v. Tennant*, 722 S.W.2d 762, 763 (Tex.App.—Houston [14th Dist.] 1986, no writ) (same facts as *Helmsley*, *Helmsley* applied with scant discussion); *see also Milberg Factors, Inc. v. Hurwitz–Nordlicht Joint Venture*, 676 S.W.2d 613 (Tex.App.—Austin 1984, writ ref'd n.r.e.) (affirming trial court order cancelling *lis pendens*). None of the cases just cited recognized the long prevailing authority of *Midland Farms*, 282 S.W. at 612. Instead, they are each grounded on the single authority of *Lane v. Fritz*, 404 S.W.2d 110 (Tex.Civ.App.—Corpus Christi 1966, no writ). However, *Lane* has been misinterpreted. The case does not involve interlocutory or pendente lite relief at all; it cannot define the circumstances under which such relief is proper.

In *Lane*, the court of appeals affirmed a summary judgment which cancelled *lis*

---

Cotton Lands Company, which had a contract to sell the ranch lands in question, filed a pleading in intervention alleging that the plaintiff's claim was barred by limitations. The intervenor's petition, which was adopted by one of the defendants, asserted that the plaintiff's suit and the accompanying *lis pendens* had been filed to cloud title to the ranch lands and prevent their sale. On the day the intervenor's pleading was filed, a show cause for the plaintiff's appearance was issued and served. One day later, the trial court issued an order dissolving the *lis pendens* and enjoining plaintiff from further clouding defendant's title, apparently adopting the contention that plaintiff's claim was time-barred. The court of civil appeals (correctly under the analysis herein given) held that the trial court erred in cancelling the *lis pendens*. However, the court of civil appeals was incorrect in its companion holding that the order cancelling the *lis pendens* was not an injunction at all, that the injunction against further clouding title was a permanent injunction, and that the judgment was appealable because of implied severance of the intervention action.

There is much confusion between temporary injunctions and permanent injunctions. An injunction may be permanent in effect even though issued on an interlocutory basis. Where a trial court finds a prize show horse to be infected with a communicable disease and orders its immediate destruction, it has visited a permanent state of affairs upon the parties regardless of whether it styles its order as a temporary or permanent injunction. The same would be true where the court orders the immediate demolition of a building so that highway construction might proceed. Needless to say, it is generally reversible error to give relief that is permanent in effect before the case has been tried on its merits and the court is ready to issue its final order disposing of the case in full. *City of Fort Worth v. Tarlton*, 151 S.W.2d 268, 269–70 (Tex.Civ.App.—Fort Worth 1941, no writ); *see also Texas Foundries, Inc. v. International Moulders and Foundry Workers Union*, 151 Tex. 239, 248 S.W.2d 460, 464 (1952) (stating that it is error to grant a temporary injunction whose effect is to accomplish the object of the suit because to do so would be to determine rights without a trial); *Ex parte Zuccaro*, 106 Tex. 197, 163 S.W. 579, 580 (1914) (stating that a perpetual injunction is one which can be properly ordered only upon a final decree).

For the purpose of determining if the proper procedure has been followed, it is wrong to classify injunctions as temporary or permanent on the basis of the permanency of the relief granted. In the absence of special circumstances, such as consent (*Aloe Vera of America, Inc. v. CIC Cosmetics International Corp.*, 517 S.W.2d 433 (Tex.Civ.App.—Dallas 1974, no writ) and separate trial of the issues under TEX.R.CIV.P. 174(b) (*City of Garland v. Futerfas*, 665 S.W.2d 140 (Tex.App.—Dallas 1983, no writ), no matter how permanent the effect, an injunction must be classified as a temporary injunction if given on an interlocutory basis, that is, if given without the entry of a final judgment disposing of all parties and all issues. Thus, the orders for destruction of the horse and for the demolition of the building, given pursuant to show cause notice within three days after suit has been filed and after denying a request for jury trial, are but temporary injunction orders regardless of their effect and regardless of how they may be labelled. Also, the failure to require a temporary injunction bond is not grounds for declaring the injunctions to be permanent; it is grounds for summary dissolution, the rules and statutes pertaining to temporary injunctions not having been followed.

Obviously, the procedure necessary to obtain a permanent injunction was not followed in *Midland Farms*. At least under current practice, implied severances are not recognized by the Texas courts. *Pierce v. Reynolds*, 160 Tex. 198, 329 S.W.2d 76, 77–78 (1959). It follows that *Midland Farms* erred in holding that a permanent injunction had been issued. The error was "cured" by reversing on the ground that the trial court had no authority to cancel a *lis pendens* in the absence of express statutory authority.

*pendens* notices filed in a previous suit and removed the cloud on title cast by such notices. The court of appeals found that the *lis pendens* were invalid because they did not comply with the predecessor to section 12.007, article 6640 of the Texas Civil Statutes. Consequently, the court held that the *lis pendens* could be cancelled without meeting the statutory requirements for cancellation now found in section 12.008 of the Property Code.

The opinion does not elaborate on the nature of the action at the trial court level. It is clear, however, that the summary judgment represented a final judgment or a judgment that became final as a result of severance by the trial court.[3] Furthermore, under the analysis set forth herein, the *Lane* judgment was necessarily injunctive, even though the court may have acted directly on the title to the property. It follows that *Lane* involved the propriety of a final judgment, not the propriety of an interlocutory order. It follows that *Lane* provides no authority to the effect that a trial court may cancel *lis pendens* by interlocutory order in response to a simple motion.

There is no basis to distinguish *Midland Farms*, 282 S.W. at 608, from the recent cases just cited, *Moss, Helmsley*, and *Milberg*. The latter cases are supported only by a misconstrued authority. We should expressly decline to follow them; the rule stated in *Midland Farms* should be recognized as controlling.

Repeating for emphasis, *Lane* has been misinterpreted; it is not authority for the interlocutory dissolution of a *lis pendens* in response to a common motion. However when properly interpreted, *Lane* illustrates a ready and proper avenue to obtain relief from an unfounded *lis pendens*—file a motion for summary judgment. Permanent injunctions may be had by way of summary judgment when the facts are not subject to

reasonable dispute and the moving party is entitled to his decree as a matter of law. *See Minton v. Frank*, 545 S.W.2d 442 (Tex. 1976). If the moving party cannot obtain a summary judgment upon the whole case, he may request a severance if he establishes that he is entitled to immediate relief from the *lis pendens*.

In the case before us, it follows from the analysis contained herein that the action of the court below was injunctive in nature. Being injunctive in nature, the right of interlocutory appeal attaches. We must reverse and dissolve because there was neither notice nor evidence taken; neither was there a finding of probable right and injury; nor was bond required. *See Gibson v. Shaver*, 434 S.W.2d 462, 464 (Tex.Civ.App. —Tyler 1968, no writ) (dissolving temporary injunction issued without allowing adverse party opportunity to present evidence).

The fact that the trial court undertook to act in personam makes it even more apparent that the relief granted was injunctive in nature. The decretal portions of the order read:

IT IS ORDERED, ADJUDGED and DECREED, that any and all notices of Lis Pendens ... are to be removed immediately.

IT IS FURTHER ORDERED, ADJUDGED and DECREED, the Plaintiff shall not cause to be filed any [additional] notice of Lis Pendens on any property [involved in this suit].

Plainly, the second proviso constitutes in personam relief of an injunctive nature. *Hughes*, 647 S.W.2d at 8. Properly construed, the former proviso is also injunctive in form. The court did not undertake to directly act against the real estate. If it had so undertaken, the first proviso would have read, in substance, "are hereby removed." To the contrary, the language

---

3. *Lane* is silent as to the precise means followed to bring the cancellation of the *lis pendens* before the appellate court. However, a summary judgment which fails to dispose of all parties and all issues is interlocutory and non-appeal-

able. We must assume from the fact that the Court of appeals accepted the *Lane* appeal that a severance had been entered. The elementary rule of non-appealability of the partial summary judgments could not have escaped the court.

"are to be removed immediately" must be construed as a command that the plaintiff execute releases of *lis pendens* on pain of being imprisoned for contempt. Particularly inasmuch as the plaintiff's liberty is involved, due process commands us to interpret the language as being an injunctive command in order to protect his right of appeal and his right of personal freedom.

There are a number of reported cases debating whether the interlocutory relief there involved was or was not injunctive. The language contained in the several cases is most confusing, almost impossible of reconciliation. However, the majority of the cases in point fit the analysis herein contained. The heart of this dissent, if it has been missed by the reader, is the proposition that any order which is in personam in nature is presumptively injunctive and subject to interlocutory appeal if entered pendente lite. The same presumption must apply when the court undertakes to act directly against real property in lieu of acting in personam. There can be no doubt that there are various in personam procedures outlined by the law which, either by long established tradition or by specific statute or rule, are not injunctive in nature. However, exceptions may not be allowed to obscure the rule. Unless a clear exception exists, an in personam order is presumptively injunctive. If issued pendente lite, it is, by definition a temporary injunction, and the right of interlocutory appeal applies.

I dissent. The trial court below, acting only upon a common motion, entered a simple order which granted injunctive relief pendente lite. It was error for the court to grant injunctive relief without requiring the movant to comply with the statute and rules pertaining to temporary injunctions. *See Sobel v. Taylor*, 640 S.W.2d 704 (Tex. App.—Houston [14th Dist.] 1982, no writ) (dissolving temporary injunction for lack of compliance with rules of civil procedure). The order must be reversed and the injunction dissolved.